CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2014 JUN -4 PM 12: 18

DEPUTY CLERK NT

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA §
§
v. §
§
MATTIAS TEZOCK §

3-14CR-0211M

INDICTMENT

The Grand Jury charges:

At all times material to this Indictment, unless otherwise indicated:

## I. Introduction

1. Starting no later than September 30, 2005, and continuing until at least March 17, 2011, defendant **Mattias Tezock** unlawfully possessed confidential, proprietary, and trade secret information from his previous employer, Voltaix, LLC ("Voltaix"), and attempted to convert, and did convert, that information to the economic benefit of himself through the development, manufacture, marketing, and sale of the specialty gas, germane.

2. After his termination from Voltaix on or about September 30, 2005, Tezock almost immediately began taking steps to misappropriate Voltaix's confidential, proprietary, and trade secret recipe and process for manufacturing and purifying high-purity germane gas by creating a competing business entity and attempting to steal business from Voltaix through the active solicitation of at least one of Voltaix's customers.

3. During subsequent civil litigation brought by Voltaix, **Mattias Tezock** took steps to hide his unlawful possession of Voltaix's confidential, proprietary, and trade secret information when he deleted files or otherwise manipulated computer evidence in an attempt to prevent Voltaix from learning the scope and magnitude of his breach and he provided false testimony regarding the same under oath in a deposition in the civil litigation.

## II. The Defendant

4. **Mattias Tezock**, a Ph.D. chemical engineer, is the owner and principal of Metaloid Precursors, Inc., a business located at 226 Metro Drive, Terrell, Texas 75160, in the Dallas Division of the Northern District of Texas. Metaloid Precursors, Inc. is in the business of manufacturing, producing, purifying, and selling germane gas.

5. Between on or about April 12, 2004, and on or about September 30, 2005, **Mattias Tezock** was employed by Voltaix as a Chemical Engineer.

## III. Voltaix, LLC and its Trade Secrets

6. Founded in the mid-1980s, Voltaix is a multi-national corporation that manufactures specialty chemicals for the semiconductor and solar-energy industries. With its headquarters in North Branch, New Jersey, Voltaix manufactures, purifies, and supplies the chemical compound germane ($GeH_4$), which is used in the production of semiconductor and solar-cell products.

7. Voltaix manufactures germane to exacting quality and purity specifications that are required by its customers located in and out of the United States. Germane, especially at the purity levels made by Voltaix, is a hazardous chemical that requires very

specific manufacturing and handling techniques.

8. Over approximately 25 years and at great expense, Voltaix has developed a specific, industry-leading, and exacting secret and confidential scientific method to make and purify germane to specifications required by its customers. In particular, Voltaix has developed a particular secret and confidential recipe that is used to manufacture high-purity germane as required by Voltaix's customers.

9. Voltaix has taken reasonable measures to keep secret and confidential its recipe and manufacturing process used to make and purify germane. Voltaix's recipe and scientific method and process to make germane derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means, by the public.

10. Voltaix maintains a description of the manufacturing and purification process for high-purity germane gas, including the recipe, in its Process Control Work Instructions, a document that contains proprietary, confidential, and trade secret information of Voltaix.

11. Voltaix maintains drawings of the manufacturing and purification process, equipment used, and process flow for its high-purity germane in Piping and Instrumentation Documents, which are known in the industry as "P&IDs" and which contain proprietary, confidential, and trade secret information of Voltaix.

12. Voltaix developed calculations that are used to design and build a germane production facility to ensure that in case of a deflagration of germane (i.e., a subsonic explosion that causes a fire), the deflagration will be safely contained within the plant,

which calculations include proprietary, confidential, and trade secret information of Voltaix.

13. Voltaix maintains documents identifying the precise equipment needed, including pumps and compressors, in order to implement its manufacturing and purification process for producing high-purity germane gas, which contain proprietary, confidential, and trade secret information of Voltaix.

## IV. Mattias Tezock's Employment with Voltaix

14. Between on or about April 12, 2004, and on or about September 30, 2005, **Mattias Tezock** worked at Voltaix in North Branch, New Jersey, as a chemical engineer. **Mattias Tezock** primarily worked on the pre-commissioning of Voltaix's germane processing and manufacturing plant.

15. On or about April 12, 2004, as required for his employment at Voltaix, **Mattias Tezock** signed and agreed to an "Employment and Non-Compete Agreement" (hereinafter, "Employment Agreement"). In the Employment Agreement, **Mattias Tezock** acknowledged and agreed to the following:

a. To keep confidential "any secret, confidential or proprietary information and know-how" of Voltaix, including Voltaix's "plans, customers, costs, prices, uses and applications of products, results of investigations or experiments, and all apparatus, products, processes, compositions, samples, formulas, computer programs and manufacturing methods at any time used, developed, investigated, made or sold by [Voltaix], before, during, and after the Employee's tenure of employment, which are not in the public domain"; and

b. That "subsequent to his employment, he will not disclose to others or use any Information so long as (i) [Voltaix] still treats the information as confidential or proprietary and (ii) the information has not become part of the public domain"; and

c. That he "agrees to deliver to [Voltaix] at the termination of employment all correspondence, memoranda, notes, records, drawings, sketches, plans, customer lists, product compositions or other documents and all copies thereof, made by, composed by or delivered to Employee and which are in Employee's possession or control at such date and which are related in any way to the business and operations of [Voltaix]"; and

d. That during the term of his employment, and for a period of 18 months thereafter, he would not "directly or indirectly, plan, organize or engage in any business competitive with any synthesized or proprietarily purified product marketed or planned for marking by [Voltaix] and/or become associated with others involved in any such acts, and will not engage in any other activity which may create a conflict of interest with [Voltaix]."

16. On or about April 12, 2004, **Mattias Tezock** signed an "Employee Confidentiality Acknowledgement Form." In the "Employee Confidential Acknowledgement Form," **Mattias Tezock** acknowledged and agreed to the following:

a. That "the protection of confidential information/intellectual property, and trade secrets of Voltaix and its customers is critical in maintaining [Voltaix's] competitive position and therefore need to be treated by all Voltaix personnel with the utmost caution and respect"; and

b. That "information pertaining to manufacturing processes, including analytical procedures, may only be shared under the terms of formal confidentiality agreements"; and

c. That "[p]roduct development information and customer orders are also strictly confidential and may only be shared with the individual customers and their agents that are directly involved with the product development work and/or the customers that placed the orders."

17. On or about October 6, 2004, **Mattias Tezock** signed an "Acknowledgment and Receipt of Employee Handbook," in which **Mattias Tezock** acknowledged that he

had received, read, and understood the information in Voltaix's Employee Handbook. In particular, the Employee Handbook provides an example of "sensitive" documents to include "intellectual property documents such as chemical production work instructions and P & ID's."

18. On or about August 31, 2005, Voltaix notified **Mattias Tezock** that his employment at Voltaix would be terminated as of September 30, 2005.

19. During **Mattias Tezock's** final month of his employment at Voltaix, **Mattias Tezock** was permitted to work from home on certain projects for Voltaix, which he did. During that period, **Mattias Tezock** was permitted to take home certain files and other documents relating to the specific projects that he was tasked to finish.

20. On or about September 30, 2005, **Mattias Tezock** delivered to Voltaix the final work product for the projects that he was working on from home during the month of September. **Mattias Tezock** also returned a Lexar Jumpdrive Secure flash drive bearing Serial Number 106A7801105843021104, which **Mattias Tezock** had used with Voltaix's permission to transfer files from Voltaix's computers to his personal computer at home during the month of September 2005.

## V. Mattias Tezock's Possession and Use of Voltaix's Trade Secrets

21. Almost immediately after his termination, **Mattias Tezock** began violating his Employment and Non-Compete Agreement by taking steps to create a competing business that used Voltaix's confidential, proprietary, and trade secret information, including in particular the recipe and manufacturing process for producing high-purity germane.

22. Among other things, **Mattias Tezock** accessed and modified confidential, proprietary, and trade secret documents of Voltaix; created a business plan for his competing company (then called, Germsil); acquired a 12,000 square foot industrial building located at 226 Metro Drive, Terrell, Texas 75160; incorporated the business as Metaloid Precursors, Inc.; issued press releases concerning Metaloid Precursors, Inc.'s development of germane; and solicited business from Company A, an entity known to the Grand Jury that was a customer of Voltaix. **Mattias Tezock** took these steps and others in an effort to convert Voltaix's trade secret information to the economic benefit of himself in a manner that he knew would injure the owner of the trade secret information.

**VI. Voltaix, LLC files a lawsuit against Mattias Tezock in Kaufman County**

23. On or about January 29, 2010, Voltaix files a civil lawsuit against **Mattias Tezock** and others in Kaufman County, Texas. The civil lawsuit alleged theft of trade secrets among other things.

24. On or about February 19, 2010, Voltaix caused **Mattias Tezock** to be hand served with the civil petition and several motions, including a motion to inspect his computers and other electronic storage devices, a motion for an order to preserve evidence, and a motion to expedite discovery. Also on or about February 19, 2010, Voltaix's attorneys served a letter on **Mattias Tezock** instructing him to preserve and not destroy or alter evidence, including computer files.

25. On or about February 26, 2010, the court in Kaufman County granted Voltaix's motions for preservation of evidence, expedited discovery, and an inspection of **Mattias Tezock's** and Metaloid Precursors, Inc.'s computers. The court instructed

Mattias Tezock to produce his and Metaloid Precursors, Inc.'s computers for inspection.

26. On or about March 17, 2010, **Mattias Tezock** produced four computers and two digital storage devices, including a Dell Precision 390 computer.

27. Forensic analysis of the four computers and two digital storage devices determined that additional computers and storage devices had been withheld by **Mattias Tezock.**

28. On or about March 17, 2011, after Voltaix obtained a court order requiring additional computers and storage devices to be produced, **Mattias Tezock** produced for inspection a Kingston Data Traveler digital storage device.

29. Following his termination from Voltaix, **Mattias Tezock** unlawfully possessed Voltaix's proprietary, confidential, and trade secret information, including at least the following electronic files:

a. Starting at least as early as August 31, 2005, and continuing until at least on or about March 17, 2010, **Mattias Tezock** possessed Metaloid Precursors, Inc.'s "Germanium Hydride Process Plant Standard Operating Procedures," which contains Voltaix's proprietary, confidential, and trade secret recipe and manufacturing and purification process for producing high-purity germane gas, forensically recovered from **Mattias Tezock's** Dell Precision 390 computer;

b. Starting at least as early as August 31, 2005, and continuing until at least on or about March 17, 2010, **Mattias Tezock** possessed a file entitled "Deflagration Calc.xls," which contains Voltaix's proprietary, confidential, and trade secret germane deflagration calculations relating to Voltaix's germane manufacturing and purification

process, forensically recovered from **Mattias Tezock's** Dell Precision 390 computer;

c. Starting at least as early as August 31, 2005, and continuing until at least on or about March 17, 2010, **Mattias Tezock** possessed a file entitled "GERMANE FLOW SHEET.xls," which contains Voltaix's proprietary, confidential, and trade secret information relating to its germane manufacturing and purification process, forensically recovered from **Mattias Tezock's** Dell Precision 390 computer; and

d. Starting at least as early as August 31, 2005, and continuing until at least on or about March 17, 2011, **Mattias Tezock** possessed a file entitled "GeH4 Pilot Plant update.dwg," which contains Voltaix's proprietary, confidential, and trade secret P&IDs for its germane manufacturing and purification process, forensically recovered from Mattias Tezock's Kingston Data Traveler digital storage device.

**----- NOTHING FURTHER ON THIS PAGE -----**

Count One
Unauthorized Possession of Stolen Trade Secrets
(Violation of 18 U.S.C. § 1832(a)(3), (4))

30. The Grand Jury incorporates and realleges the Introduction to this Indictment, including specifically Paragraphs 1 through 29, as if set forth fully herein.

31. Starting at least as early as September 30, 2005, and continuing through at least on or about March 17, 2010, in the Northern District of Texas, the defendant, **Mattias Tezock**, with the intent to convert trade secrets belonging to Voltaix, which trade secrets are related to and included in products that are produced for and placed in interstate and foreign commerce, did possess and attempt to possess such information, knowing such information to have been stolen and appropriated, obtained, and converted without authorization, intending and knowing his acts would injure Voltaix, including specifically his possession of the following described electronic file:

a. Metaloid Precursors, Inc.'s "Germanium Hydride Process Plant Standard Operating Procedures," which contains Voltaix's proprietary, confidential, and trade secret recipe and manufacturing and purification process for producing high-purity germane gas.

All in violation of 18 U.S.C. § 1832(a)(3), (4).

Count Two
Unauthorized Possession of Stolen Trade Secrets
(Violation of 18 U.S.C. § 1832(a)(3), (4))

32. The Grand Jury incorporates and realleges the Introduction to this Indictment, including specifically Paragraphs 1 through 31, as if set forth fully herein.

33. Starting at least as early as September 30, 2005, and continuing through at least on or about March 17, 2010, in the Northern District of Texas, the defendant, **Mattias Tezock**, with the intent to convert trade secrets belonging to Voltaix, which trade secrets are related to and included in products that are produced for and placed in interstate and foreign commerce, did possess and attempt to possess such information, knowing such information to have been stolen and appropriated, obtained, and converted without authorization, intending and knowing his acts would injure Voltaix, including specifically his possession of the following described electronic file:

a. A file entitled "Deflagration Calc.xls," which contains Voltaix's proprietary, confidential, and trade secret germane deflagration calculations.

All in violation of 18 U.S.C. § 1832(a)(3), (4).

Count Three
Unauthorized Possession of Stolen Trade Secrets
(Violation of 18 U.S.C. § 1832(a)(3), (4))

34. The Grand Jury incorporates and realleges the Introduction to this Indictment, including specifically Paragraphs 1 through 33, as if set forth fully herein.

35. Starting at least as early as September 30, 2005, and continuing through at least on or about March 17, 2010, in the Northern District of Texas, the defendant, **Mattias Tezock**, with the intent to convert trade secrets belonging to Voltaix, which trade secrets are related to and included in products that are produced for and placed in interstate and foreign commerce, did possess and attempt to possess such information, knowing such information to have been stolen and appropriated, obtained, and converted without authorization, intending and knowing his acts would injure Voltaix, including specifically his possession of the following described electronic file:

a. A file entitled "GERMANE FLOW SHEET.xls," which contains Voltaix's proprietary, confidential, and trade secret information relating to its germane manufacturing plant.

All in violation of 18 U.S.C. § 1832(a)(3), (4).

Count Four
Unauthorized Possession of Stolen Trade Secrets
(Violation of 18 U.S.C. § 1832(a)(3), (4))

36. The Grand Jury incorporates and realleges the Introduction to this Indictment, including specifically Paragraphs 1 through 35, as if set forth fully herein.

37. Starting at least as early as September 30, 2005, and continuing through at least on or about March 27, 2011, in the Northern District of Texas, the defendant, **Mattias Tezock**, with the intent to convert trade secrets belonging to Voltaix, which trade secrets are related to and included in products that are produced for and placed in interstate and foreign commerce, did possess and attempt to possess such information, knowing such information to have been stolen and appropriated, obtained, and converted without authorization, intending and knowing his acts would injure Voltaix, including specifically his possession of the following described electronic file:

a. A file entitled "GeH4 Pilot Plant update.dwg," which contains Voltaix's proprietary, confidential, and trade secret P&IDs for its germane manufacturing and purification process.

All in violation of 18 U.S.C. § 1832(a)(3), (4).

Forfeiture Notice
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(2)(A))

Upon conviction of any of the offenses alleged in Counts One through Four of this Indictment, and pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), the defendant, **Mattias Tezock**, shall forfeit to the United States of America all property constituting or derived from proceeds traceable to the respective offense, including a "money judgment" in the amount of U.S. currency constituting the proceeds traceable to the scheme alleged in the offense.

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the above-referenced property subject to forfeiture, as a result of any act or omission of the Defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United

**----- NOTHING FURTHER ON THIS PAGE -----**

States of America to seek forfeiture of any other property of the Defendant up to the value of the above-described property subject to forfeiture.

A TRUE BILL

FOREPERSON

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

J. NICHOLAS BUNCH
Assistant United States Attorney
Texas Bar No. 24050352
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8600
Facsimile: 214.767.4100
Email: nick.bunch@usdoj.gov

PAUL YANOWITCH
Assistant United States Attorney
Illinois State Bar No. 6188269
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8600
Facsimile: 214.767.4100
paul.yanowitch@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

MATTIAS TEZOCK

INDICTMENT

18 USC § 1832(A)(3)(4)
Unauthorized Possession of Stolen Trade Secrets

18 USC § 981 (a)(1)(C)
Forfeiture Notice

4 Counts

A true bill rendered

DALLAS FOREPERSON

Filed in open court this 4th day of June 2014.

Clerk

**Warrant to be Issued**

UNITED STATES DISTRICT/MAGISTRATE JUDGE
No Criminal matter pending